IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville April 28, 2015

**SYLVIA LAIRD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-C-1993      Seth W. Norman, Judge**

_____

**No. M2014-02020-CCA-R3-PC – Filed June 1, 2015**

_____


Petitioner, Sylvia Laird, appeals the denial of her petition for post-conviction relief. She claims that she received ineffective assistance of counsel when she was erroneously informed that she could not file a motion to withdraw her guilty plea before sentencing. Consequently, Petitioner argues that a subsequent guilty plea agreement that determined her sentence was unconstitutional because it was entered unknowingly, involuntarily, and unintelligently. After a careful review of the record, the parties' briefs, and the applicable law, we conclude that Petitioner has proven that she is entitled to post-conviction relief and, therefore, reverse the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Kyle Mothershead, Nashville, Tennessee, for the appellant, Sylvia Laird.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Victor S. Johnson III; District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural Background*

This is a post-conviction relief matter that is the result of the admitted faulty advice given by trial counsel to Petitioner.

On July 22, 2011, the Davidson County Grand Jury indicted Petitioner of one count of aggravated child abuse, a Class B felony, two counts of aggravated child neglect, a Class B felony, and one count of coercion of a witness, a Class D felony. All charges arose from alleged conduct toward her minor son, F.G.[1] On October 31, 2012, pursuant to a plea agreement, Petitioner pled guilty to attempted aggravated child abuse and coercion of a witness; the remaining charges were dismissed. Petitioner's sentence was to be determined by the trial court.

Before Petitioner could be sentenced, her attorney died, and the trial court appointed a public defender to represent Petitioner in January 2013. After negotiating with Petitioner's new trial counsel, the State agreed to allow Petitioner to withdraw her original plea in exchange for a new plea agreement that included an agreed sentence, obviating the need for a sentencing hearing. On February 1, 2013, Petitioner pled guilty to reckless aggravated assault, a Class D felony, and child neglect, a Class A misdemeanor. Pursuant to the plea agreement, the trial court imposed a three-year sentence for the former offense and a sentence of eleven months and twenty-nine days for the latter. Both sentences were to be served concurrently and suspended to probation.

On January 31, 2014, Petitioner filed a petition for post-conviction relief through counsel, which she later amended on February 7th and March 21st. In her petition, she alleges that she received ineffective assistance from both of her trial counsel—the first failed to file a motion to withdraw her original guilty plea, and the second erroneously informed Petitioner that she could not withdraw her original guilty plea because more than thirty days had passed since its entry. Consequently, Petitioner claims that her second guilty plea was unknowing or involuntary under the circumstances. The post-conviction court held an evidentiary hearing on April 15, 2014.

Petitioner testified that she first learned of the child abuse and neglect charges in 2011 when the Department of Human Services contacted her at work. She felt that she was not guilty of the alleged crimes and intended to "fight" the charges. Petitioner hired an attorney who attended her church. Their relationship during this case was "great"; they communicated well, and Petitioner trusted this attorney.

Although Petitioner's initial intent was to proceed to trial, her attorney eventually advised her to accept the State's plea offer. Petitioner entered a guilty plea, but she "had a lot of reservations about entering the plea." When Petitioner expressed these

---

[1] It is the policy of this Court to protect the identity of a minor victim.

reservations to her attorney, he told her to think about her decision for a few days and then to let him know if she changed her mind because there was still time to file a motion to withdraw her plea. The day following the plea hearing, after discussing the matter with family members, Petitioner informed her attorney that she wanted to withdraw her guilty plea. Petitioner's attorney told her that "he would go to the court and file the paperwork and have it withdrawn." Petitioner understood that she would then proceed to trial on the original charges.

Petitioner did not know if her attorney filed a motion to withdraw the plea, but she was under the impression that he did so. The record indicates he did not.

Petitioner discovered that the sentencing hearing was still scheduled to occur in December 2012 when she was contacted to be interviewed for the presentence report. Petitioner later learned that her attorney had passed away when she appeared in court in January 2013, the date for her rescheduled sentencing hearing. The trial court appointed the District Public Defender's office as a second attorney to represent Petitioner at that time.

The second attorney met with Petitioner the day that she was appointed and again on the next court date. Petitioner informed her second attorney that she wanted to withdraw her guilty plea and proceed to trial. Petitioner's second attorney informed her that "it was too late for [her] to go to trial" and that the only options were "to plea bargain or do a sentencing hearing." Consequently, Petitioner entered a second guilty plea according to the terms of a new plea agreement. Had Petitioner known that she still could have attempted to withdraw her original guilty plea, she would have done so and would not have entered the second guilty plea.

Initially, during cross-examination, Petitioner could not recall whether her case was ever set for trial and claimed that she "wasn't aware" of how often her first attorney had plea discussions with the State. Later, however, she remembered "coming to court in October of 2011" and "deciding that [she was not] going to enter a plea [and was] going to set the case for trial." Petitioner also remembered an occasion, prior to her trial date, when she was prepared to enter a guilty plea but the plea agreement fell through because the parties disagreed over whether the convictions could be expunged.

Petitioner acknowledged that, in April of 2012, federal law enforcement agents informed the State that she was cooperating with them. Petitioner hoped this cooperation might warrant favorable consideration during her plea negotiations in this case.

Petitioner admitted that she entered her original guilty plea "right on the eve of trial" but did not know how close the dates were.[2]  She insisted, "[My first attorney] told me that I could take the plea now and think about it because I was never comfortable with taking the plea. . . .  He said I had time to think about it, that I could withdraw it in so many days."  Petitioner said that her first attorney gave her that option "because [she] wanted to discuss the matter with [her] mother and [her] sister."  After Petitioner called her first attorney and told him that she changed her mind, he told her that "he was going to withdraw the plea."

On the date of the sentencing hearing, Petitioner's "understanding" was that her first attorney had already filed a motion to withdraw her guilty plea.  She did not know why her case was rescheduled to January 2013 or what was going to occur on that date.  When the date arrived, Petitioner attempted to contact her first attorney but could not "get a hold of him."  "As far as [Petitioner] knew," her first attorney was her attorney of record at that time.

After Petitioner's second attorney was appointed, the second attorney told Petitioner that she could not withdraw her original guilty plea and go to trial because "the time had lapsed."  However, the second attorney advised her that she could continue to plea bargain rather than have a sentencing hearing.

Petitioner denied telling her first attorney in December 2012 that she "didn't want [him] to represent [her] anymore."  She denied that her first attorney requested to be relieved as her counsel.  Petitioner stated that she knew that she had a year to file a petition for post-conviction relief and explained that she waited ten months before hiring post-conviction counsel "because [she] had to get more money to retain another lawyer.  [Petitioner] didn't have any more money."

Petitioner's second attorney testified that she was an assistant public defender with twenty-eight years of experience practicing law.  On the day that she was appointed, the second attorney met with Petitioner at the courthouse.  They reviewed the court file and the discovery materials together, and Petitioner told her second attorney about the case.  They "discuss[ed] that there had been some recanting by her son."  The prosecutor told the second attorney that the victim "had recanted part of the coercion allegation."[3]

---

[2] The record does not contain the exact trial date.

[3] During her testimony, Petitioner claimed that her second attorney did not tell her prior to the second plea hearing that the prosecutor had informed the second attorney that Petitioner's son "had recanted part of the original allegations."

-4-

Petitioner's second attorney discussed the procedural history of the case with the prosecutor and learned that Petitioner's previous attorney made an oral motion to withdraw the original guilty plea at the sentencing hearing in December 2012. However, the court file did not contain a written motion to withdraw the guilty plea. At that time, the second attorney "erroneously believed that the time for withdrawing a plea was thirty days after the plea was entered and . . . was not aware that the provision actually allows a plea to be withdrawn any time prior to sentencing for fair and just reasons." Petitioner's case was continued on the docket until the next week.

At the following court date, Petitioner's second attorney "was still under the impression . . . that [Petitioner] did not have the option to withdraw her plea because more than thirty days had passed since her plea with no written motion filed by [her previous attorney]." Petitioner expressed to her second attorney that she wanted to withdraw the plea and go to trial. However, Petitioner's second attorney told her that she only had two options: enter a second guilty plea according to the terms of the new negotiated plea agreement or have a sentencing hearing on the original plea. Petitioner's second attorney admitted that she later learned that there was not a thirty day time limit on filing a motion to withdraw a guilty plea, rather such a motion may be filed and granted "for any fair and just reason" prior to sentencing. The second attorney explained:

> [The terms of the second plea agreement were] clearly more favorable than the one [Petitioner] had entered with [her previous attorney] on its face because it was for guaranteed probation and lesser charges, but the problem is I told her she didn't have any choice about it. I told her [that] her plea was final. I told her that . . . [she] had thirty days to do something about asking to withdraw [her] plea, and I believed it when I told her. I mean, I messed that up. I told her that her choices were to either do this new negotiated plea or to proceed on with the sentencing hearing under the plea that she had entered with [her previous attorney].

The second attorney recalled that Petitioner's purported justifications for wanting to withdraw her guilty plea were: 1) she was not guilty of aggravated child abuse; 2) the injury did not rise to the level of serious bodily injury; and 3) she wanted a plea offer for misdemeanor probation.

After the evidentiary hearing, the post-conviction court took the case under advisement and entered an order denying relief on September 5, 2014. Petitioner timely appealed.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, this Court gives deference to the post-conviction court's findings as to witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence. *Momon*, 18 S.W.3d at 156 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented below and is bound by the findings of the post-conviction court unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). However, the post-conviction court's conclusions of law and application of the law to the facts are subject to de novo review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

Petitioner contends that she received ineffective assistance from trial counsel when her first attorney failed to file a motion to withdraw her original guilty plea as requested and also when her subsequent attorney erroneously advised her at the sentencing hearing that she could no longer file such a motion. As a consequence of these errors, Petitioner insists that her second guilty plea was unknowing and involuntary under the circumstances because she did not know that the law still afforded her an opportunity to withdraw her original guilty plea and proceed to trial—the course of action she truly desired. The State argues that the post-conviction court properly determined that Petitioner did not adequately prove that she received ineffective assistance.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee an accused the right to effective assistance of counsel. *Burns*, 6 S.W.3d at 461. In order to receive post-conviction relief based on a claim of ineffective assistance of counsel, a petitioner must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

To establish deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. Counsel's

performance is considered reasonable "if the advice given or the services rendered [were] within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). This Court "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. A petitioner is not entitled to the benefit of hindsight to second-guess a reasonably based trial strategy or a sound, but unsuccessful, tactical decision. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, the specific inquiry is whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Tennessee Rule of Criminal Procedure 32(f) affords a defendant two opportunities to seek withdrawal of a guilty plea: 1) before sentence is imposed and 2) after sentencing but before the judgment becomes final. A judgment of conviction becomes final thirty days after entry, and the trial court then loses jurisdiction. *State v. Pendergrass,* 938 S.W.2d 834, 837 (Tenn. 1996). Withdrawal of a guilty plea is permitted prior to sentencing for "any fair and just reason," but after sentencing, withdrawal is available only "to correct manifest injustice." Tenn. R. Crim. P. 32(f)(1)-(2).

The record establishes that Petitioner entered her initial guilty plea on October 31, 2012. She claims that she reluctantly entered the plea because she did not believe that she was guilty of the charged offenses and that on the next day she instructed her first attorney to file a motion to withdraw her guilty plea because she changed her mind and wished to go to trial instead. For whatever reason, Petitioner's first attorney did not file such a motion.

Petitioner appeared with her first attorney on December 12, 2012, for a sentencing hearing on the original convictions. At the hearing, Petitioner's first attorney gave verbal notice that Petitioner intended to file a motion to withdraw her guilty plea. The case was reset on the trial court's docket in January 2013. At the January court date, Petitioner learned that her first attorney was deceased and that a motion to withdraw her guilty plea had not been filed. The trial court appointed Petitioner a second attorney and reset the matter for February 1, 2013.

At some point, the prosecutor informed Petitioner's second attorney that the victim had recanted some of his testimony that formed the evidentiary basis for the coercion of a witness charge to which Petitioner initially pled guilty. Although Petitioner expressed her desire to withdraw her guilty plea to her second attorney, her second attorney unequivocally told her that the law no longer permitted her that option. Petitioner's second attorney advised Petitioner that her only options were to be sentenced by the judge on the original guilty plea or to negotiate a new plea bargain that included a recommended sentence. Trial counsel negotiated a new plea agreement with the State, which included a recommended sentence. On February 1st, Petitioner withdrew her original guilty plea and entered a new guilty plea according to the terms of the second plea agreement, which the trial court accepted.

Trial counsel's failure to file a motion to withdraw a guilty plea, when affirmatively instructed by a defendant to do so, constitutes professional deficiency. *See Patrick Devin Camp v. State*, No. E2012-00198-CCA-R3-PC, 2013 WL 3103974, at *20 (Tenn. Crim. App. June 17, 2013), *perm. app. denied* (Tenn. Nov. 12, 2013) ("Trial counsel owed a duty of representation to the Petitioner, including filing a motion to withdraw the [guilty] plea if the Petitioner so chose, and failed in that duty."); *Robert Jason Burgess v. State*, No. M2011-01324-CCA-R3-PC, 2012 WL 3090832, at *10 (Tenn. Crim. App. July 31, 2012), *perm. app. denied* (Tenn. Nov. 20, 2012) ("Within the time period for filing a motion to withdraw the [guilty] plea, counsel should have filed the motion or affirmed that the Petitioner no longer wished to pursue withdrawal of the plea."). Whether due to illness or oversight, Petitioner's first attorney failed to follow her directive to file a motion to withdraw her original guilty plea. Subsequently, this error was compounded when Petitioner's second attorney erroneously advised her on a clearly established rule of procedure, thereby foreclosing the available legal course of action most desired by Petitioner. We conclude that Petitioner's trial counsel, collectively, performed deficiently.

As for prejudice, Petitioner must prove that, but for trial counsel's errors, there is a reasonable probability that she would not have entered the second guilty plea. *See Calvert*, 342 S.W.3d at 486. Petitioner claims that she only entered the second guilty plea because her second attorney told her that she could no longer withdraw her original guilty plea and proceed to trial. When a petitioner claims that ineffective assistance of counsel thwarted the withdrawal of a guilty plea, this Court has consistently construed the prejudice requirement to mean that a petitioner must show that there is a reasonable probability that a motion to withdraw the guilty plea would have prevailed. *See Patrick Devin Camp*, 2013 WL 3103974, at *20 (concluding that "the Petitioner has failed to demonstrate any likelihood that a motion to withdraw his plea would have been granted, and the Petitioner has therefore failed to demonstrate any prejudice resulting from his lawyer's failure to file same"); *Robert Jason Burgess*, 2012 WL 3090832, at *11

(concluding that, "[b]ecause the trial court rejected the factual premise upon which the Petitioner contends he sought to withdraw the pleas, he has not shown that he was prejudiced by trial counsel's actions"); *Roy Nelson v. State*, No. W2006-01946-CCA-R3-PC, 2007 WL 3254443, at *6 (Tenn. Crim. App. Nov. 2, 2007), *perm. app. denied* (Tenn. Mar. 3, 2008) (affirming post-conviction court's finding that the petitioner had not established prejudice from trial counsel's failure to inform him of the thirty day deadline to file a motion to withdraw his guilty plea because the petitioner failed to prove the alleged factual basis for the motion at the post-conviction hearing); *Arthur W. Stamey, III v. State*, No. E2005-02261-CCA-R3-PC, 2006 WL 1097450, at *5 (Tenn. Crim. App. Apr. 7, 2006), *perm. app. denied* (Tenn. Oct. 2, 2006) (concluding that "the petitioner failed to demonstrate any prejudice resulting from counsel's failure to timely file the motion for withdrawal of the [guilty] plea" because "the petitioner did not establish any basis which permits the withdrawal of his guilty plea"); *Perry Franks v. State*, No. M2004-00554-CCA-R3-PC, 2005 WL 351260, at *3 (Tenn. Crim. App. Feb. 9, 2005), *perm. app. denied* (Tenn. June 27, 2005) (concluding that "the Defendant has failed to demonstrate any likelihood that a motion to withdraw his plea would have been granted, and the Defendant has therefore failed to demonstrate any prejudice from his lawyer's failure to file same"); *Donald Mitchell Green v. State*, No. E2002-02517-CCA-R3-PC, 2003 WL 22102861, at *7 (Tenn. Crim. App. Sept. 11, 2003), *perm. app. denied* (Tenn. Jan. 26, 2004) (rejecting ineffective assistance claim for failure to file a motion to withdraw guilty plea because asserted basis for withdrawal was legally inadequate).

The post-conviction court did not evaluate the likelihood of success of a motion to withdraw Petitioner's original guilty plea because it found that Petitioner failed to prove by clear and convincing evidence that she actually wanted to withdraw her guilty plea and go to trial. In its order denying relief, the court observed, "Based on the evidence against the Petitioner and her prior apparent willingness to enter a guilty plea, it is suspect for Petitioner to now contend that she never wanted to enter a plea but actually desired to try the matter before a jury."[4] However, the evidence in the record preponderates against this finding of the post-conviction court.

Petitioner testified that she had significant reservations about entering her original guilty plea and informed her first attorney of her desire to withdraw the plea the very next day. The veracity of this assertion is not corroborated by any other evidence, but Petitioner's second attorney testified that the prosecutor informed her that, at the sentencing hearing in December, Petitioner's first attorney made a verbal declaration of his intent to file a motion to withdraw, which was why the matter was continued on the trial court's docket. Clearly, Petitioner changed her mind about her original guilty plea at

---

[4] We note that the order of the post-conviction court does not make an explicit credibility determination as to Petitioner.

some point during the approximately six weeks after the entry of the plea and the sentencing hearing.[5]

Petitioner also testified that she maintained her desire to file a motion to withdraw her original guilty plea to her second attorney. Her second attorney testified to the same. On this point, the post-conviction court provided:

> [Petitioner's second attorney], an extensively experienced and incredibly skilled defense attorney, testified at the evidentiary hearing that she erroneously advised the Petitioner regarding potential plea withdrawal. However, part of her negotiations necessarily included a withdrawal of the original plea agreement. Such logic belies counsel's statements made at the evidentiary hearing in this matter.

While we understand the reasoning of the post-conviction court, we disagree that the only explanation for the perceived inconsistency in trial counsel's advice to Petitioner and her conduct is that her post-conviction testimony was untrue. Trial counsel appears to have negotiated the second plea agreement with the understanding that Petitioner could not unilaterally move to withdraw her plea at that time but could, however, withdraw her plea with the consent of the State, which was conditioned upon Petitioner contemporaneously entering another guilty plea pursuant to the terms of the new plea agreement with a sentencing recommendation.

Furthermore, we also deem it immaterial that Petitioner did not file a motion to withdraw her second guilty plea before it became final. Petitioner, as she suggested at the post-conviction hearing, quite understandably may not have realized that she had received ineffective assistance until after the thirty day window for such a motion had passed. We do not take the absence of a motion to withdraw the second guilty plea as indication that Petitioner was actually content with her plea and the disposition of her

---

[5] At the post-conviction hearing, the State emphasized Petitioner's "conduct in this particular case of making a decision, changing her mind, and making a decision, and changing her mind." At one point the State suggested that it would "be fair to say that this litany of events . . . , in terms of [Petitioner's] conduct in all of this, shows a pattern, essentially of [her] waiting, vacillating, deciding, then withdrawing, deciding, then withdrawing, waiting, and then stretching this out over the space of quite a long period of time." While we take no position on this characterization, we find it important to note that the paramount issue in this case is Petitioner's intention during the period after she entered her original guilty plea and before she entered her second guilty plea. Although Petitioner's overall pattern of behavior may be indicative of her state of mind during the relevant timeframe, it should not be given disproportionate weight. The evidence, aside from Petitioner's own testimony, shows that during the relevant timeframe, Petitioner informed both of her attorneys that she wanted to file a motion to withdraw her original guilty plea, which she had a right to do.

case. Indeed, when Petitioner learned that she had been misled, she pursued the only remaining avenue of relief—post-conviction proceedings. In sum, all of the evidence, including Petitioner's conduct, establishes that she has maintained a consistent course of resistance to her original guilty plea, one that was thwarted by the failures of both counsel.

We turn now to the potential merits of a motion to withdraw Petitioner's original guilty plea. In *State v. Phelps*, 329 S.W.3d 436 (Tenn. 2010), the supreme court adopted a non-exclusive multi-factor inquiry for trial courts determining whether a defendant has a "fair and just reason" for withdrawing a guilty plea prior to sentencing, as permitted by Rule 32(f). In such a situation, trial courts should assess the following:

> 1. The length of time between the entry of the guilty plea and the filing of the motion to withdraw it;
>
> 2. Why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings;
>
> 3. Whether the defendant has asserted and maintained his [or her] innocence;
>
> 4. The circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt; and
>
> 5. Once the defendant has established a fair and just reason, whether the prosecution will be prejudiced should the plea be withdrawn.

*Id.* at 447 (quoting *State v. Patrick Maxwell*, No. E1999-00124-CCA-R3-CD, 2000 WL 1606582, at *8-9 (Tenn. Crim. App. Oct. 27, 2000)). Furthermore, "although a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or other improper purpose," a trial court cannot deny a motion to withdraw simply because "the defendant's reasons could be characterized as a 'change of heart.'" *Id.* at 448. The burden of proof is on the defendant to establish sufficient justification for withdrawal. *Id.* at 444 (citing *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995)).

We believe that the record establishes a reasonable probability that the outcome of Petitioner's case would have been different had either of her trial counsel filed a motion to withdraw her original guilty plea prior to entry of the second guilty plea. Not only does Petitioner contend that she had an earnest change of heart after the plea, which potentially could be a satisfactory basis for withdrawal on its own, but Petitioner was also

presented with a change in circumstances—the victim had recanted part of his testimony that provided the factual basis for one of the charges to which Petitioner originally pled guilty. Thus, aside from weakened evidentiary support for the coercion of a witness charge, the State also faced potential impeachment evidence that could have adversely impacted the victim's credibility as a witness at trial as to all of the charges. It does not appear that any of the other factors would have strongly weighed against Petitioner, if at all. Given this situation, we believe that Petitioner had a considerable likelihood of success on the merits of a motion to withdraw her original guilty plea had she been afforded that opportunity. Therefore, we conclude that Petitioner has sufficiently undermined confidence in the outcome of this proceeding to establish prejudice.[6]

Finally, we also disagree with the post-conviction court's conclusion that Petitioner already received the relief that she seeks—an opportunity to withdraw her original guilty plea—when she was permitted to withdraw that plea in conjunction with the second plea agreement. That withdrawal was conditioned upon Petitioner's acceptance of the terms of the second plea agreement. Petitioner was not made aware that she had the option of seeking withdrawal of her original guilty plea "with no strings attached."[7]

Having concluded that Petitioner received ineffective assistance of counsel prior to the entry of her second guilty plea, we have no difficulty also concluding that the plea was entered unknowingly. "To pass constitutional muster . . . a guilty plea must be entered knowingly, voluntarily, and intelligently." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010) (citations omitted). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)). "[T]he standard of inquiry is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ward*, 315 S.W.3d at 465 (citation and internal quotation marks omitted). "If the accused is to make a 'voluntary and intelligent choice among the

---

[6] We decline the State's invitation to conclude that Petitioner has waived her argument by not including copies of the transcripts of both plea hearings. *See State v. Ballard*, 855 S.W.2d 557, 560-61 ("Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review . . . an appellate court is precluded from considering the issue."). The record is adequate for resolution of the issues as it is; we see no need for a record of what transpired at those hearings.

[7] This remains true notwithstanding the following finding of the post-conviction court: "[The victim's] recantation played an essential part in the State's willingness to agree to permit the Petitioner to withdraw the plea and negotiate a new settlement, which disposed of any charges relating to coercion of a witness."

-12-

alternative courses of action' available to him, counsel must advise the accused, among other things, of the choices that are available to him as well as the probable outcome of these choices." *Parham v. State*, 885 S.W.2d 375, 384 (Tenn. Crim. App. 1994) (footnotes omitted). When assessing the validity of a guilty plea, a court must look at the totality of the circumstances, including such factors as:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Powers v. State*, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting *Blankenship*, 858 S.W.2d at 904).

The evidence establishes that Petitioner only entered her second guilty plea based upon her understanding that she could no longer seek to withdraw her original guilty plea and proceed to trial. Under these circumstances, it simply cannot be maintained that her plea was made "knowingly, voluntarily, and intelligently" because she was acting upon the affirmative, yet erroneous, advice of counsel that the "alternative course of action" that Petitioner most desired—and, as had been previously indicated by counsel in open court, that she intended to pursue—was no longer available to her.

## Conclusion

Because Petitioner has succeeded in showing that she received ineffective assistance of trial counsel and that her convictions are founded upon a constitutionally infirm guilty plea, the decision of the post-conviction court is reversed, and this case is remanded for further proceedings.

_____
TIMOTHY L. EASTER, JUDGE